558 So.2d 416 (1990)
Kenneth Allen STEWART, Appellant,
v.
STATE of Florida, Appellee.
No. 70245.
Supreme Court of Florida.
March 15, 1990.
*417 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Erica M. Raffel and Joseph R. Bryant, Asst. Attys. Gen., Tampa, for appellee.
*418 PER CURIAM.
Stewart appeals his convictions of first-degree murder and second-degree arson and his sentences of death and fifteen years' imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentences, with the exception of the death penalty.
Daniel Clark heard two gunshots on December 6, 1984, at about 12:15 a.m., "just a split second or two" apart. He got out of bed, walked outside, looked down the road in both directions, but saw nothing. At approximately 1:00 that same morning, Linda Drayne spotted a body lying alongside the road and reported it to the police. Investigation revealed that the body was that of Ruben Diaz, who had been shot twice from a distance of a foot or less, once in the front of the head, and once behind the right ear. Sometime after midnight, police also discovered Diaz's car, which had been set on fire in a mall parking lot. Several months later, Stewart was arrested in connection with another crime and while in custody was charged with first-degree murder and second-degree arson for the instant offenses. During the guilt phase of the trial, Randall Bilbrey, who shared a trailer with Stewart from December 9 to December 19, 1984, testified that Stewart told him that he and another man were looking for someone to rob when they spotted a big, expensive-looking car outside a bar. They went in and engaged the car's owner, Diaz, in conversation, convincing him to give them a ride. Once in the car, Stewart, who sat in the back seat, pulled a gun and ordered Diaz to drive to a wooded area where he ordered Diaz to get out of the car, lie on the ground, and place his hands on his head. He took Diaz's wallet, which contained fifty dollars, and a small vial of cocaine, and then, at the urging of the second man, shot Diaz twice in the head. Stewart and the second man later burned the car to destroy fingerprints.
The state's second key witness was Terry Smith, a friend with whom Stewart shared an apartment. Smith testified that Stewart told him that a man picked him up hitchhiking and that he pulled a gun, ordered the man to drive to a certain location where Stewart ordered the man out of the car, made him lie on the ground, robbed him, and shot him twice. Stewart was convicted of both crimes. He was sentenced to fifteen years in prison for arson, and, consistent with the jury recommendation, death for first-degree murder.
Stewart first claims that the trial court deprived him of an effective defense. During cross-examination, Stewart's lawyer asked Smith whether Stewart had told him that it was Bilbrey who really committed the murder. The prosecutor objected, saying it was unethical for the lawyer to be making such statements in the form of questions unless a later witness was going to substantiate the content of the questions. The objection was sustained. Later, during closing argument, defense counsel twice tried to argue that Stewart had merely related to Smith what Bilbrey had told Stewart about the murder. The state's objections again were sustained. Stewart argues that the trial court thus deprived him of a viable defense and that this constitutes a violation of his fundamental right to present a defense and his sixth amendment right to cross-examine witnesses. We do not find reversible error for the following reasons: When the court sustained the prosecutor's objection on cross-examination, the witness had already twice denied that Stewart told him Bilbrey had committed the murder, thus effectively closing off this approach with this particular witness. There were no further questions that could have been asked on this point without being repetitive or abusive. As to closing argument, the court erred when it precluded defense counsel from arguing that Stewart told Smith what Bilbrey told him. The lawyer was hypothesizing from evidence that had been presented during the trial and should have been allowed to continue. However, this error was harmless; counsel presented on several occasions and the jury rejected his theory that Bilbrey was the real killer who related the murder to Stewart.
Stewart claims that the trial court wrongly allowed Detective Marsicano to *419 testify as to what Stewart told Smith about the crimes. After he was arrested in connection with other offenses, Smith told Marsicano that Stewart had related to him details of the instant crimes. After Smith testified, the state called Marsicano. Defense counsel objected to the anticipated testimony as hearsay. The prosecutor countered that the prior consistent statement was nonhearsay since it was being offered to combat Stewart's claim that Smith had recently fabricated his testimony in return for favorable treatment by the state. The objection was overruled and Marsicano testified as to what Smith had told him. Stewart alleges that this testimony should not have been allowed under the recent fabrication provision because the same reason that was given for discounting Smith's in-court testimony existed at the time Smith spoke to Marsicano, and thus the prior consistent statement was not made before the reason to falsify came into existence. We disagree. During cross-examination of Smith, defense counsel indicated that Smith was not to be believed because he was attempting to obtain favored treatment at sentencing on convictions that had been obtained on other charges. This was a recent situation; when Smith spoke to Marsicano, no convictions had been obtained and no sentences were pending. Marsicano's testimony was properly offered to combat Stewart's charge of recent fabrication. See DuFour v. State, 495 So.2d 154 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); § 90.801(2)(b), Fla. Stat. (1983).
Before the penalty phase began, defense counsel moved to withdraw on the grounds that because he had previously represented to the jury that Stewart did not commit the crime, he had now lost all credibility before the jury since they had found his client guilty. The motion was denied. Stewart now claims that the denial was error that prevented him from receiving effective assistance of counsel during the penalty phase. We find no merit in this claim. Under Stewart's argument, new counsel would have to be appointed prior to conducting the penalty phase in every capital case in which there is a conviction after a not guilty plea, a clearly impractical and unnecessary practice.
During the penalty phase, the court allowed into evidence testimony by victims of crimes for which Stewart earlier had been convicted. Stewart claims that entry of the judgment of conviction alone should have been permitted; he asserts that testimony concerning the facts of the prior crimes was prejudicial since the victims were persons Stewart had shot. We have previously addressed this matter in Elledge v. State, 346 So.2d 998, 1001 (Fla. 1977):
The question then arises whether it was proper to permit Mrs. Nelson to testify concerning the events which resulted in the conviction as opposed to restricting the evidence to the bare admission of the conviction. We conclude it was appropriate to admit Mrs. Nelson's testimony. This is so because we believe the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely must be a valid consideration for the jury and the judge.
We find no error here.
Stewart points out that this Court has held that a defendant cannot be precluded from offering as a mitigating factor any aspect of his character and record that could justify reduction of a death sentence. Perry v. State, 395 So.2d 170, 174 (Fla. 1980). Yet, according to Stewart, the trial court wrongly excluded: 1) testimony of Stewart's uncle relating to how Stewart's father was killed in a barroom fight, 2) testimony of Stewart's grandmother concerning cigarette burns on Stewart when he was an infant, and 3) a letter of remorse from Stewart to the family of one of his victims. We find no error. The details of the barroom fight were simply irrelevant. The witness began to relate obscure details: the name of the tavern, the people who were playing pool, who was with whom, the issue over who was losing. The *420 court determined that this was pointless and confusing. As to the alleged cigarette burns, this proffered testimony was speculative in the extreme: The grandmother testified that three days before trial a relative told her that a second relative had told the first that twenty-one years ago the second relative had seen marks on infant Stewart that could have been burns. The court properly ruled that the probative value of this testimony was negated by its highly speculative nature. The letter of remorse concerned an unrelated crime. Stewart's remorse as to the present crime was attested to by his girlfriend.
Stewart claims that the jury should not have been instructed that it could consider "cold, calculated, and premeditated" as a factor, since the judge made no mention of this factor when he sentenced Stewart. Evidence on the cold, calculated, and premeditated nature of the crime was presented at trial, and the trial court is required to instruct on all aggravating and mitigating circumstances "for which evidence has been presented." Fla. Std.Jury Instr. (Crim.) at 78, 80. Stewart asserts that testimony by the victim's brother and sister should have been excluded from the sentencing phase of his trial. A contemporaneous objection is required to preserve this point for review on appeal, and none was made. See Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989).
Stewart argues that ample evidence was presented to support instructions on the following statutory mitigating circumstances: The crime was committed "while the defendant was under the influence of extreme mental or emotional disturbance," and "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." § 921.141, Fla. Stat. (Supp. 1988). Defense counsel asked that both instructions be given and requested that the qualifiers "extreme" and "substantially" be deleted. The court properly refused to give the modified instructions. It also declined to give the standard versions. We conclude that while no evidence was presented to support a standard instruction on extreme disturbance, testimony was adduced to support a standard instruction on impaired capacity. Bilbrey's uncontroverted testimony showed that during the period when he lived with Stewart immediately following the shooting, Stewart "was ... drunk most of the time," would drink "[a]nything he could get his hands on," drank "twenty-six packs [sic] a day," and used drugs. Dr. Merin's testimony indicated that Stewart had a history of chronic alcohol and drug abuse since early adolescence. Stewart told him that he normally drank as much as a gallon of alcohol a day and abused drugs. Dr. Merin stated that in his opinion Stewart was drunk at the time of the shooting and that his control over his behavior was reduced by his alcohol abuse.
The trial court determined that the instruction on impaired capacity was inappropriate on the basis of Dr. Merin's additional testimony that he believed that Stewart was impaired but not substantially so. The qualified nature of Dr. Merin's testimony does not furnish a basis for denying the requested instruction. As noted above, an instruction is required on all mitigating circumstances "for which evidence has been presented" and a request is made. Once a reasonable quantum of evidence is presented showing impaired capacity, it is for the jury to decide whether it shows "substantial" impairment. Cf. Cooper v. State, 492 So.2d 1059 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1330, 94 L.Ed.2d 181 (1987) (no instruction required upon bare presentation of controverted evidence of alcohol and marijuana consumption, without more). To allow an expert to decide what constitutes "substantial" is to invade the province of the jury. Nor may a trial judge inject into the jury's deliberations his views relative to the degree of impairment by wrongfully denying a requested instruction.
"The Legislature intended that the trial judge determine the sentence with advice and guidance provided by a jury, the one *421 institution in the system of Anglo-American jurisprudence most honored for fair determinations of questions decided by balancing opposing factors. If the advisory function were to be limited initially because the jury could only consider those mitigating and aggravating circumstances which the trial judge decided to be appropriate in a particular case, the statutory scheme would be distorted. The jury's advice would be preconditioned by the judge's view of what they were allowed to know."
Floyd v. State, 497 So.2d 1211, 1215 (Fla. 1986) (quoting Cooper v. State, 336 So.2d 1133, 1140 (Fla. 1976) (emphasis added), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977)). We are unable to say beyond a reasonable doubt that the failure to give the requested instruction had no effect on this jury's recommended sentence. See State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). This error mandates a new sentencing proceeding.
We note that no written findings in support of the death penalty were ever submitted by the trial court. In Grossman, 525 So.2d at 841, we announced the rule that prior to, or contemporaneously with, orally pronouncing a death sentence, courts are required to prepare a written order which must be filed concurrent with the pronouncement. In Stewart v. State, 549 So.2d 171 (Fla. 1989), we ruled that should a trial court fail to provide timely written findings in a sentencing proceeding taking place after Grossman, we are compelled to remand for imposition of a life sentence. Because the instant sentencing proceeding preceded Grossman, that rule is inapplicable here. However, if the court on remand reimposes the death penalty without written findings, the rule will apply.
Based on the foregoing, we affirm the convictions and the fifteen-year sentence. We reverse the death sentence and remand for a new sentencing proceeding before a jury.
It is so ordered.
OVERTON, McDONALD, SHAW and KOGAN, JJ., concur.
BARKETT, J., specially concurs with an opinion.
GRIMES, J., concurs in part and dissents in part with an opinion, in which EHRLICH, C.J., concurs.
BARKETT, Justice, specially concurring.
I agree with the majority's conclusion that Stewart's conviction should be affirmed. Likewise, I agree that the trial court erred in failing to instruct the jury on the statutory mitigating factors. However, I would commute Stewart's sentence to life imprisonment under the authority of section 921.141(3), Florida Statutes (1983). Section 921.141(3) requires that the trial judge make "specific written findings of fact" based upon the aggravating and mitigating circumstances. To this date, the trial court has never provided any written findings to support the imposition of the death penalty.
Under these circumstances, section 921.141(3) requires that "the court shall impose [a] sentence of life imprisonment." See also Stewart v. State, 549 So.2d 171, 177-78 (Fla. 1989) (Barkett, J., dissenting in part).
GRIMES, Justice, concurring in part, dissenting in part.
I do not believe that the court erred in refusing to instruct the jury on the statutory mitigating circumstance that "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." The only testimony bearing on this subject was that of Dr. Merin, a psychologist.[1] From his examination, Dr. Merin found no evidence of psychosis or neurosis but rather concluded that Stewart had an antisocial personality. He observed that Stewart was acting under mental and emotional disturbance, but not extreme, remarking "he pretty much knew what was going on there." Summing up, Dr. Merin stated:

*422 Q. And in your opinion, on the date of this killing when he shot Ruben Diaz, that his ability or his capacity to conform his conduct to the requirements of law was not substantially impaired?
A. Correct.
In setting forth statutory aggravating and mitigating circumstances, the legislature has concluded that these are the most significant factors to be considered in determining whether to impose the death penalty. Insofar as mitigation is concerned, the judge and jury may also consider any other aspect of the defendant's character or record and any other circumstances of the offense. On its face, Dr. Merin's testimony fell short of reaching the statutory criteria of substantial impairment of capacity.[2] Dr. Merin's testimony was properly considered under the trial judge's instructions on nonstatutory mitigating circumstances.
I concur in the judgment of guilt, but I dissent from the conclusion that a new sentencing proceeding is required. I would temporarily remand for the entry of a written sentencing order. See Stewart v. State, 549 So.2d 171 (Fla. 1989).
EHRLICH, C.J., concurs.
NOTES
[1] Bilbrey's testimony about Stewart's drinking related to a period of time after the murder.
[2] In concluding that Stewart's capacity was not substantially impaired, he necessarily took into account what Stewart told him about his drinking.