620 So.2d 177 (1993)
Kenneth Allen STEWART, Appellant,
v.
STATE of Florida, Appellee.
No. 77217.
Supreme Court of Florida.
May 13, 1993.
Rehearing Denied June 23, 1993.
*178 James Marion Moorman, Public Defender, and A. Anne Owens, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
SHAW, Justice.
Stewart appeals his sentence of death on resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
The facts of the crime are set out fully in our initial opinion on direct appeal. See Stewart v. State, 558 So.2d 416 (Fla. 1990). Stewart and an accomplice selected a robbery victim at a bar and convinced him to give them an automobile ride. Stewart pulled a gun, forced the victim from the car, told him to lie on the ground, and shot him twice in the head at close range. Stewart was convicted of first-degree murder and, consistent with the jury's recommendation, sentenced to death. This Court affirmed the conviction, but remanded for resentencing before a jury because the trial judge failed to give a requested instruction on the statutory mitigating circumstance of impaired capacity even though evidence concerning impairment was presented. See § 921.141, Fla. Stat. (1989).
The State put on a number of witnesses at resentencing. Randall Bilbrey testified that Stewart lived with him in Bilbrey's trailer for ten days following the crime and described the killing in detail to Bilbrey. Michelle Acosta testified that she and a friend picked up Stewart hitchhiking several months after the instant crime and he shot them both, killing the friend. James Harville testified that a few days after the hitchhiking incident Stewart entered the convenience store where Harville was working, pointed a gun in Harville's face, *179 announced, "This is a hold up," and shot him between the eyes. Stewart took the stand for the defense and stated that he had decided not to testify. Dr. Merin, a clinical psychologist who evaluated Stewart in 1986, testified concerning Stewart's childhood and his emotional and psychological state. Finally, Stewart's paternal aunt testified as to his childhood and present rehabilitation. Consistent with the jury's unanimous recommendation, the judge imposed the death penalty, finding two aggravating[1] and no mitigating circumstances.
Stewart claims as his first issue that the prosecutor impermissibly commented on his right to remain silent. At resentencing, Stewart took the stand and testified as follows on direct:
Q. [By defense counsel.] Mr. Stewart, you understand that this proceeding is the penalty phase of a trial in which you have already been found guilty of first-degree murder.
A. I do.
Q. And do you understand that you have the right to testify in this proceeding regarding your life and your background and the way you were raised and the things you went through?
A. I do.
Q. Has it been your intention all along to testify as to that, as to those things, your life?
A. Yeah, I had intended to, yeah.
Q. Have you changed your mind?
A. I have.
Q. Okay. And do you intend to testify about it now?
A. No.
Q. Okay. Why is that?
A. It's too difficult.
The following discussion took place on cross examination:
Q. [By the prosecutor.] Is it too difficult to sit here under oath, Mr. Stewart, and tell those twelve people over there why you committed all these murders and other crimes; is that what you are telling us?
MR. JONES [defense counsel]: Objection, Your Honor. That question goes beyond the scope of my direct examination.
The prosecutor then asked Stewart if he expected the defense mental health expert, Dr. Merin, to testify and asked him a few details of his interviews with the doctor. Later, in closing, the prosecutor made the following comments on Stewart's brief testimony:
The person who could best tell you why he committed these terrible crimes, he certainly didn't have much to say to you. His testimony was about the briefest of any witness that appeared... .
... .
Rather than be exposed to what I call the crucible of truth, and that is cross-examination, where you can ferret out what is happening, what the truth is, rather than be exposed to this, the defendant took the easy way out and chose to have his self-serving statements, which we certainly can't cross-examine, come to you through the testimony of his [witnesses].
Stewart claims that the prosecutor's questions on cross examination and statements in closing constituted impermissible comments on his right to remain silent. We disagree. The prosecutor's initial question on cross examination was a fair response to Stewart's comment on direct that it was simply too difficult for him to testify concerning the events of his life. The murders were a major event in his life and could easily pose difficulty for him. As to the prosecutor's subsequent questions concerning Dr. Merin and his comments in closing, Stewart failed to object and the matter is not preserved.
Stewart claims that it was error for the judge to deny his request to change counsel. The request was dilatory. The entire trial had been completed, the jury had made its recommendation, and arguments had been completed when the request was made. All that remained was *180 for the judge to pronounce sentence. We find no error.
When Stewart's paternal aunt testified for the defense concerning beatings Stewart had received as a child, the State asked her if the maternal grandmother was going to testify to corroborate her statements. This was error, since the prosecutor was in effect asking the jury to disbelieve the aunt unless the grandmother testified (which she did not). Every witness who testifies could be asked a similar question, capitalizing on the opposition's failure to produce supporting witnesses. See State v. Michaels, 454 So.2d 560 (1984). On this record, however, we find the error harmless beyond a reasonable doubt.
Stewart's claim that the trial court erred in giving a detailed instruction on the aggravating circumstance of cold, calculated, and premeditated is procedurally barred because he failed to object. Next, although competent substantial evidence supports the trial court's finding that the two mental health mitigating circumstances were not established, the court erred in failing to consider the mental health evidence as nonstatutory mitigating evidence. Based on this record, we conclude beyond a reasonable doubt that the error had no effect on the court's decision as to sentence. The remainder of Stewart's claims[2] are without merit.
Accordingly, we affirm the sentence of death.
It is so ordered.
OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs specially with an opinion.
BARKETT, Chief Justice, specially concurring.
I agree with the majority's analysis on all the issues in this case, but continue to adhere to my original view that Stewart's sentence should have been commuted to life imprisonment pursuant to section 921.141(3), Florida Statutes (1983), which provides that "[i]f the court does not make the findings requiring the death sentence, the court shall impose sentence of life imprisonment." See Stewart v. State, 549 So.2d 171, 177-78 (Fla. 1989) (Barkett, J., concurring in part, dissenting in part). The court made no written findings when the sentence was originally imposed. The clear and unambiguous language of the statute therefore mandates that we should have reduced Stewart's sentence to life.
NOTES
[1] The judge found that Stewart had been convicted of a prior violent felony and the present crime was committed during a robbery. See § 921.141, Fla. Stat. (1983).
[2] Stewart additionally claims that the court should have given an instruction on the mitigating circumstance of duress, that the court failed to find nonstatutory mitigating circumstances that were established by the evidence, that his death sentence is disproportionate, and that a life sentence should be imposed because the trial court failed to make written findings at the first sentencing proceeding.