872 So.2d 226 (2003)
Kenneth Allen STEWART, Appellant,
v.
STATE of Florida, Appellee.
No. SC01-1998.
Supreme Court of Florida.
September 11, 2003.
Rehearing Denied April 20, 2004.
James Marion Moorman, Public Defender, and A. Anne Owens, Assistant Public *227 Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, and Carol M. Dittmar, Senior Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Appellant, Kenneth Allen Stewart, appeals his sentence of death after his resentencing. We have jurisdiction. See Art. V, § 3(b)(1), Fla. Const. We affirm.

I. FACTUAL BACKGROUND

The underlying facts are detailed in our decision on Stewart's direct appeal. See Stewart v. State, 558 So.2d 416, 418 (Fla. 1990). The essential facts, however, are as follows. Stewart walked into a bar and convinced one Ruben Diaz to give him a ride in his car. Once in the car, Stewart pulled a gun and ordered Diaz to drive to a wooded area. He then ordered Diaz out of the car and made him lie on the ground with his hands on his head. After removing the cash from Diaz's wallet, Stewart shot Diaz twice in the head, killing him. He then set Diaz's car on fire to destroy the fingerprints.
Stewart was initially sentenced to death. We reversed that sentence because the trial court failed to give a requested instruction on the statutory mitigating circumstance of impaired capacity even though the defense presented evidence on that defense. See Stewart, 558 So.2d at 416. On remand, Stewart was resentenced to death and we affirmed that sentence. See Stewart v. State, 620 So.2d 177 (Fla. 1993). During postconviction proceedings, Stewart and the State agreed that Stewart would waive any potential guilt-phase claims and the State would agree to a new sentencing. By a seven-to-five vote, the jury again recommended a sentence of death. After conducting a Spencer[1] hearing, the trial judge sentenced Stewart to death. The court found three aggravating circumstances: (1) Stewart previously had been convicted of violent felonies (one first-degree murder, two attempted murders, an aggravated assault, and two robbery convictions); (2) he was under a sentence of imprisonment at the time of the murder; and (3) he committed the murder for pecuniary gain. The court found the two statutory mitigating factorshis extreme mental disturbance at the time of the shooting and his inability to conform his conduct to the requirements of the law. The judge gave "some" weight to both factors even though she concluded that Stewart's mental disturbance was not extreme and his impairment was not substantial. The court also found and weighed nonstatutory mitigation.

II. ISSUES ON APPEAL

Stewart raises five issues on appeal. We summarily reject the first three because we have repeatedly addressed the same issues.[2] Therefore, we address only *228 claims 4 and 5, asserting that the trial court failed to properly weigh the mitigation and that Stewart's death sentence is disproportionate.

A. The Trial Court's Weighing of Mitigation

Appellant argues that the trial court failed to give enough weight to the two statutory mental mitigators it found. We review this claim under an abuse of discretion standard. Blanco v. State, 706 So.2d 7, 10 (Fla.1997). The mental health experts presented conflicting testimony about the existence and extent of the two statutory mental mitigators. The defense's experts testified that Stewart's mental condition was "extreme" and "substantial," while the State's expert testified it was not.[3] The trial court found the two statutory mental mitigators, but gave them only "some" weight.
Stewart essentially wants us to reevaluate the evidence and assign different weight to the mitigating factors. As we have said before, however:
[E]xpert testimony alone does not require a finding of extreme mental or emotional disturbance. Even uncontroverted opinion testimony can be rejected, especially when it is hard to reconcile with the other evidence presented in the case. As long as the court considered all of the evidence, the trial judge's determination of lack of mitigation will stand absent a palpable abuse of discretion.
Foster v. State, 679 So.2d 747, 755 (Fla. 1996) (citations omitted).
The sentencing order shows that the trial court considered, but ultimately rejected, the defense expert's testimony about the severity of Stewart's mental condition. Under Foster, the trial court could have totally rejected the statutory mitigators. Instead, however, it found that the two statutory mental mitigators existed but reduced the weight given to them based on its findings about the severity of Stewart's mental condition. As this Court stated in Quince v. State, 414 So.2d 185, 187 (Fla.1982), "[t]he trial judge was not unreasonable in failing to give great weight to this mitigating factor, which he nevertheless did find to exist, in the light of contradictory evidence." Likewise, in light of the contradictory evidence presented to the trial court below, it did not abuse its discretion by reducing the weight given to the two statutory mental mitigators from "full weight" to "some weight."

B. Proportionality

Stewart finally argues that the death penalty is disproportional in this case compared with other capital cases because of the substantial mitigation he presented. The trial court found three aggravating factors and 25 mitigating factors, including two statutory mitigators.
We find that Stewart's sentence of death is proportional. The aggravating factors were: that Stewart had been convicted of a prior violent felony (great weight); that he was under a sentence of *229 imprisonment when the crime was committed (modest weight); and that the capital felony was committed for pecuniary gain (great weight). The previous violent felony aggravator comprised several crimes, including another murder, two attempted murders, armed robbery, attempted armed robbery, and aggravated assault. The mitigating factors consisted of the two statutory mental mitigators, i.e., extreme mental disturbance at the time of the murder and inability of Stewart to conform his conduct to the requirements of the law at the time of the murder. The trial court also found 23 nonstatutory mitigating circumstances.[4] However, as we have repeatedly held, proportionality "is not a comparison between the number of aggravating and mitigating circumstances." Porter v. State, 564 So.2d 1060, 1064 (Fla. 1990); see also Ocha v. State, 826 So.2d 956, 965 (Fla.2002); Philmore v. State, 820 So.2d 919, 939-40 (Fla.2002); Morris v. State, 811 So.2d 661, 668 (Fla.2002). Rather, it is a qualitative review of each aggravating and mitigating circumstance. Ocha, 826 So.2d at 965. This qualitative analysis is then compared with other capital cases to ensure that the death penalty is being applied uniformly across the State. Bradley v. State, 787 So.2d 732, 745 (Fla.2001).
Here, appellant's sentence of death is proportional to other cases where the death sentence has been applied. See Pope v. State, 679 So.2d 710 (Fla.1996) (affirming death sentence with aggravators of previous violent felony conviction and pecuniary gain, both statutory mental mitigators, and nonstatutory mitigators). Moreover, on Stewart's direct appeal to this Court following his last resentencing for this same murder, we found Stewart's death sentence to be proportional. Stewart, 620 So.2d at 180 n. 2.

III. CONCLUSION

For the reasons stated above, we affirm Stewart's sentence of death.
It is so ordered.
WELLS, PARIENTE, LEWIS, CANTERO, and BELL, JJ., concur.
PARIENTE, J., concurs with an opinion.
ANSTEAD, C.J., concurs in part and dissents in part with an opinion.
QUINCE, J., recused.
*230 PARIENTE, J., concurring.
I concur fully in the majority opinion in this case, and write separately only to address Stewart's claim that the trial court erred in declining to instruct the jury on each of his thirteen proposed nonstatutory mitigators. I reiterate that
in a proper case, in which the evidence is insufficient to warrant an instruction on the statutory mitigating circumstances contained in section 921.141(6), Florida Statutes (2002), an instruction that the jury may consider a specific circumstance in mitigation may nonetheless be warranted. Whereas each of the "statutory" aggravators is specifically enumerated for the jury, the standard catch-all instruction on mitigation provides no guidance on how to determine what factors are mitigating. In particular, facts indicating emotional disturbance, extreme duress, or impaired capacity which fall short of the threshold for statutory mitigation remain potentially significant considerations in a jury's advisory sentencing decision.
Belcher v. State, 851 So.2d 678, 687 (Fla. 2003) (Pariente, J., specially concurring). In this case, the trial court gave the standard instruction on the statutory mitigators of extreme emotional disturbance and impaired capacity as well as the catchall instruction. Under these circumstances, I conclude that, as in Belcher, the trial court did not err in refusing to instruct on the "virtual laundry list of proposed nonstatutory mitigation," which "would not have provided greater assistance to the jury than the catch-all instruction alone." Id.
ANSTEAD, C.J., concurring in part and dissenting in part.
I concur in the majority opinion except for the summary rejection of the defendant's first three claims on appeal. For the reasons I expressed in my opinion in Downs v. Moore, 801 So.2d 906, 918-922 (Fla.2001), I disagree with the majority's summary rejection of the defendant's claim that the brief instruction on nonstatutory mitigation provided adequate guidance to the jury as to what it might properly consider during its deliberations. Further, for the reasons explained in my opinion in Duest v. State, 855 So.2d 33, 38, 2003 WL 21467248 (Fla. June 26, 2003), I also cannot agree with the majority's decision to summarily reject the defendant's claims based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
NOTES
[1] Spencer v. State, 615 So.2d 688, 691 (Fla. 1993) (requiring trial court to conduct separate evidentiary hearing after jury's recommendation to (a) give the defendant, his counsel, and the State an opportunity to be heard; (b) afford, if appropriate, both the State and the defendant an opportunity to present additional evidence; and (c) allow both sides to comment on or rebut information in any presentence or medical report).
[2] Stewart first argues that he was entitled to a special jury instruction on the nonstatutory mitigation presented. We have repeatedly rejected this argument. See, e.g., San Martin v. State, 705 So.2d 1337, 1349 (Fla.1997). Second, Stewart argues that death-qualifying aggravators must be alleged in the indictment and individually found by a jury. We have repeatedly rejected this argument as well. See, e.g., Kormondy v. State, 845 So.2d 41 (Fla.2003). Finally, Stewart argues that Florida's death penalty statute is unconstitutional because it permits a jury recommendation of death by a bare majority vote. When the defendant has been convicted of a prior violent felony, as Stewart has, we have rejected the argument that a jury's recommendation of death must be unanimous. See, e.g., Doorbal v. State, 837 So.2d 940, 963 (Fla.) cert. denied, ___ U.S. ___, 123 S.Ct. 2647, 156 L.Ed.2d 663(2003).
[3] In a footnote, Stewart argues that the State's expert had a conflict of interest because he was a witness for the defense in the original penalty phase. Stewart admitted that this issue was not preserved for review. Accordingly, this subissue is procedurally barred. See Lugo v. State, 845 So.2d 74 (Fla. 2003) (nonfundamental errors are procedurally barred unless they have been preserved for review).
[4] These were: Stewart's physical abuse as a child (some weight); his witnessing of repeated physical brutality against family members and others; the normality of violence in his life (some weight); gross emotional stress between the ages of three and twelve (some weight); Stewart's inability to adapt to his surroundings (some weight); the absence of an acceptable role model in his life (modest weight); his abandonment by his mother at age three (little additional weight); abuse by his aunt while in her care (some weight); the absence of his mother during his tender years (little additional weight); the absence of a father during his tender years (modest weight); inculcation with alcohol abuse as a child (modest weight); intoxication at the time of the Diaz murder and the other murder (modest weight); his learning at age twelve that the man he believed to be his father was actually his stepfather (modest weight); low-normal intelligence (little weight); eighth-grade education (little weight); homelessness at age 20 (little weight); long-term alcohol abuse (modest weight); Stewart's crippling, lifelong obsession with the mother who abandoned him (little additional weight); mental illness for two preceding generations in his family and his own mental illness in his early twenties evidenced by suicide attempts, inability to function normally, homelessness, and criminal behavior (no additional weight); his remorse for the killing of Diaz (modest weight); his compassion for others while incarcerated (modest weight); an interest in spirituality developed during incarceration (modest weight); his sentencing on unrelated charges to 130 years in prison with an additional 30 years to be served concurrently (modest weight); and his good prison record (little weight).