[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11238
_____

D.C. Docket No. 8:11-cv-00044-JDW-EAJ


KENNETH A. STEWART,

                                                              Petitioner-Appellant,

                                versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

                                                              Respondents-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 22, 2015)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

HULL, Circuit Judge:

Kenneth Stewart, a Florida capital inmate, appeals the dismissal of his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. The district court dismissed Stewart's petition as barred by the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. After review and oral argument, we vacate the dismissal and remand for appointment of conflict-free counsel Robert Godfrey to address all the equitable tolling issues in this case and for further proceedings consistent with this opinion.

## I. CONVICTION AND DEATH SENTENCE

On December 6, 1984, Stewart robbed and murdered Ruben Diaz. Stewart v. State, 558 So. 2d 416, 418 (Fla. 1990). Diaz gave Stewart a ride in his car, and once inside, Stewart pulled out a gun and ordered Diaz to drive to a wooded location. Id. Stewart made Diaz lie on the ground, robbed him, and shot him twice. Id. Stewart burned Diaz's car to destroy evidence connecting him to the crime. Id.

After a jury trial, Stewart was convicted of first-degree murder and sentenced to death three times. The first time, the Florida Supreme Court affirmed Stewart's murder conviction but remanded for a new sentencing proceeding. Id. at 421.

2

On remand, Stewart was resentenced to death, and the Florida Supreme Court affirmed the sentence. Stewart v. State, 620 So. 2d 177 (Fla. 1993).

During subsequent state post-conviction or collateral proceedings, Stewart and the state agreed that Stewart would waive any guilt-phase claims in exchange for yet another new sentencing. Stewart v. State, 872 So. 2d 226, 227 (Fla. 2003).

Following Stewart's third penalty-phase trial in 2001, the jury recommended a sentence of death by a seven-to-five vote. Id. The state trial court sentenced Stewart to death. Id. On direct appeal, the Florida Supreme Court affirmed Stewart's third death sentence. Id. at 229. On April 20, 2004, the Florida Supreme Court denied Stewart's motion for rehearing. Stewart had 90 days after the Florida Supreme Court denied rehearing—until July 19, 2004—to file a petition for certiorari in the U.S. Supreme Court; but Stewart did not do so.[1] See Sup. Ct. R. 13.

Thus, Stewart's third death sentence became final on July 19, 2004, and Stewart had one year—until July 19, 2005—to timely file a federal habeas petition or a motion to vacate the judgment under Florida Rule of Criminal Procedure

---

[1] Stewart is under a concurrent death sentence for his murder of Mark Harris in 1985. See Stewart v. State, 549 So. 2d 171 (Fla. 1989). Harris picked up Stewart while Stewart was hitchhiking. Id. at 172. Stewart fired shots in the car (wounding Harris), forced Harris and his companion out, stole the car, and burned it after removing items from the trunk. Id. Harris died from his wounds. Id. After his conviction and death sentence, Stewart pursued state appellate and post-conviction relief. In 2007, this Court affirmed the district court's denial of Stewart's § 2254 petition as to his murder of Harris. See Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1219 (11th Cir. 2007).

3

3.851, which would statutorily toll AEDPA's one-year limitations period until its resolution.  See 28 U.S.C. § 2244(d)(1)(A), (2).

## II.  STATE POST-CONVICTION PROCEEDINGS

### A.    CCRC's Representation of Stewart During 2004-2005

On April 20, 2004, the same day the Florida Supreme Court denied rehearing as to Stewart's third death sentence, the Office of the Capital Collateral Regional Counsel ("CCRC") was appointed to represent Stewart in his state post-conviction proceedings.  On May 6, 2004, CCRC attorney Daphney Gaylord, along with CCRC attorneys Peter Cannon and Bill Jennings, filed a notice of appearance on Stewart's behalf.  On August 16, 2004, a fourth CCRC attorney, Eric Pinkard, filed a notice of appearance on Stewart's behalf.

### B.    CCRC Attorneys File Rule 3.851 Motion on July 25, 2005

On Friday, July 15, 2005, Stewart personally signed a verification for the filing of a Rule 3.851 motion prepared by CCRC attorneys Gaylord and Pinkard.  On Thursday, July 21, 2005, attorneys Gaylord and Pinkard mailed Stewart's signed Rule 3.851 motion to the Hillsborough County Clerk's Office in Tampa, Florida.  On Monday, July 25, 2005, the clerk received, stamped, and docketed the Rule 3.851 motion.  Thus, CCRC attorneys filed Stewart's Rule 3.851 motion six days after the AEDPA limitations period expired.  See Fla. R. Jud. Admin.

4

2.516(e) ("The date of filing is that shown on the face of the document by the judge's notation or the clerk's time stamp, whichever is earlier.").

## C.    July 25, 2005–June 25, 2006: CCRC's Post-Filing Actions

On February 6, 2006, Stewart, through CCRC attorneys Gaylord and Mark Gruber, filed an amended Rule 3.851 motion.[2]  On May 24, 2006, the state trial court conducted the first evidentiary hearing on the Rule 3.851 motion, at which CCRC attorney Gaylord represented Stewart.

## D.    Attorney Norgard's Representation of Stewart Begins June 26, 2006

Dissatisfied with CCRC's services, Stewart filed, on June 15, 2006, a joint stipulation to substitute CCRC attorneys Gaylord and Gruber with Stewart's retained counsel, Robert Norgard[3] of Norgard & Norgard.  On June 26, 2006, the state trial court accepted the stipulation.[4]

Attorney Norgard represented Stewart for three more evidentiary hearings on the Rule 3.851 motion, held on November 28, 2006, February 26, 2007, and September 16, 2008.  In February 2008, before the final evidentiary hearing,

---

[2] Stewart's original Rule 3.851 motion asserted 12 claims of ineffective assistance of trial counsel and violations of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  The amended motion did not add any additional claims and deleted one claim from the original motion.

[3] Robert Norgard has been a member of the Florida bar since 1981, and he worked as a public defender for over ten years before starting his own criminal defense firm.

[4] During CCRC's representation from April 20, 2004 through June 26, 2006, nothing was filed in federal court.  And through retained counsel Norgard's representation from June 26, 2006 through January 6, 2011, nothing was filed in federal court, either.

attorney Norgard was appointed as "Registry Counsel" and continued to represent Stewart in that capacity.

On October 8, 2008, the state trial court denied Stewart's amended Rule 3.851 motion on the merits.  On May 27, 2010, the Florida Supreme Court affirmed the denial of Stewart's amended Rule 3.851 motion and denied Stewart's state petition for a writ of habeas corpus.  Stewart v. State, 37 So. 3d 243 (Fla. 2010).

On June 25, 2010, the Florida Supreme Court issued its mandate in Stewart's Rule 3.851 appeal, thus concluding his state post-conviction proceedings.

### III.  FEDERAL HABEAS PROCEEDINGS

#### A.    Norgard Files Stewart's § 2254 Petition

Although the state post-conviction proceedings had concluded and the AEDPA clock had already expired, it was another 195 days–until January 6, 2011–before attorney Robert Norgard filed Stewart's federal habeas petition pursuant to 28 U.S.C. § 2254.  Stewart personally signed the § 2254 petition on December 3, 2010, 34 days before Norgard filed it in the district court.

In his § 2254 petition, filed by attorney Norgard, Stewart conceded that his petition was not filed within the one-year AEDPA limitations period, but argued that he was entitled to equitable tolling during 2004 and 2005 based on the alleged

6

misconduct of the four or more CCRC attorneys representing him in his state Rule 3.851 proceedings.

In the district court, Norgard argued that Stewart was entitled to equitable tolling for the entire time of CCRC's representation, from May 7, 2004, when he maintained CCRC was initially appointed to represent Stewart, until July 25, 2005, when CCRC filed Stewart's Rule 3.851 motion. Norgard calculated Stewart's AEDPA limitations period as from April 20, 2004 until April 20, 2005 and maintained that Stewart's Rule 3.851 motion was filed three months too late.

Norgard argued that Stewart was entitled to equitable tolling during that whole time period based on (1) CCRC's use, during the first six months of its representation of Stewart, of multiple teams of lawyers that failed to make any progress on Stewart's case, and (2) CCRC attorney Gaylord's failure to have Stewart tested for brain damage and to include a claim based on the results of the tests in the Rule 3.851 motion, despite her repeated assurances that she would do so. Norgard also noted that the state trial court had extended the filing deadline until July 23, 2005, but CCRC did not file the motion until July 25, 2005.[5]

In its response to the § 2254 petition, the state pointed out Norgard's error in calculating the AEDPA limitations period as expiring on April 20, 2005, when it

---

[5] July 23, 2005 was a Saturday, and July 25, 2005 was the Monday that followed. As such, the motion was effectively filed by the July 23 deadline. See Fla. R. Jud. Admin. 2.514(a)(1)(C).

7

did not expire until July 19, 2005; and it noted that Stewart's July 25, 2005 Rule

3.851 motion was filed only six days after the AEDPA limitations period ended on

July 19, 2005.[6]  The state assumed, for the sake of its analysis, that Stewart was

entitled to equitable tolling for these six days, and then argued that Stewart's

§ 2254 petition was still untimely because he had not filed it until January 6, 2011,

which was more than six months after the denial of his Rule 3.851 motion became

final.  The state argued that Norgard had provided no explanation for this six-

month delay.

Later, in Stewart's reply to the state's response, Norgard for the first time

pointed out that Stewart had signed the Rule 3.851 motion on July 15, 2005.

Nonetheless, Norgard continued to repeat the weak argument that equitable tolling

was warranted from May 7, 2004 to July 25, 2005, based on CCRC's "rotating

teams of lawyers" and failure to pursue the brain damage issue Stewart had

instructed CCRC to investigate.

---

[6] The state actually used July 20, 2005 as the expiration date and asserted that the Rule 3.851 motion was five days too late.  But the correct deadline was July 19, 2005.  The limitations period began to run only on July 19, 2004, 90 days after the Florida Supreme Court (on April 20, 2004) denied rehearing in Stewart's direct appeal, when the time for seeking certiorari review in the U.S. Supreme Court expired.  See 28 U.S.C. § 2244(d)(1)(A); Bond v. Moore, 309 F.3d 770, 773-74 (11th Cir. 2002); Stewart, 872 So. 2d 226.  The AEDPA limitations period expired one year later, on July 19, 2005.  See 28 U.S.C. § 2244(d)(1)(A); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that "the limitations period expires on the anniversary of the date it began to run").  Accordingly, Stewart's July 25, 2005 Rule 3.851 motion was actually filed six days after the AEDPA limitations period expired.  Still, the point stands that the state was much better in its calculations than Norgard.

Notably though, Stewart's counsel Norgard never explained the 195-day time period between when the Florida Supreme Court issued its mandate in Stewart's Rule 3.851 proceedings on June 25, 2010 and Norgard's filing of Stewart's § 2254 petition on January 6, 2011.[7]

On February 27, 2014, the district court dismissed Stewart's § 2254 petition as time-barred. The district court determined that Stewart was not entitled to equitable tolling. Stewart timely appealed.

## B.    Eleventh Circuit Proceedings

This Court granted Stewart a certificate of appealability ("COA") on two issues: whether the district court erred (1) in dismissing Stewart's § 2254 petition as time-barred under 28 U.S.C. § 2244(d)(1)(A); and (2) in concluding that the facts alleged in the § 2254 petition, accepted as true, did not entitle Stewart to any equitable tolling, or sufficient equitable tolling, to make his petition timely.[8]

On appeal, attorney Norgard argued that equitable tolling should apply for the entire time period that Stewart was represented by CCRC, and especially from July 15, 2005, when Stewart signed his Rule 3.851 motion, to July 25, 2005, when

---

[7] In the reply, Norgard mentioned the delay, but only to defend his actions by saying that he prepared the § 2254 petition in a reasonable amount of time under the circumstances.

[8] Stewart's § 2254 petition raised eight substantive claims, including ineffective assistance of counsel during the third penalty-phase proceedings. This ineffective-counsel claim is a substantial constitutional claim, which in turn supports the issuance of a COA on the equitable tolling issue. See Spencer v. United States, 773 F.3d 1132, 1137-38 (11th Cir. 2014) (en banc), cert. denied, 135 S. Ct. 2836 (2015).

Stewart's Rule 3.851 motion was filed.  Norgard, however, did not brief the issue of whether equitable tolling should apply during his own representation of Stewart, including the period between June 26, 2010 and January 6, 2011.

Even if Stewart obtained equitable tolling from July 15, 2005 through July 25, 2005 (when his Rule 3.851 motion was filed)–meaning his Rule 3.851 motion was effectively filed 4 days before the July 19 AEDPA deadline–and then was granted statutory tolling from July 25, 2005 through June 25, 2010 (when his Rule 3.851 proceedings concluded), Stewart's § 2254 petition would still be untimely because his federal habeas deadline would have been June 29, 2010, and attorney Norgard did not file Stewart's § 2254 petition until January 6, 2011, which was 191 days after June 29, 2010.

Accordingly, this Court appointed the Office of the Federal Public Defender for the Middle District of Florida as additional counsel for Stewart, to brief the issue of equitable tolling for the time period between July 25, 2005 and January 6, 2011.  Attorney Robert Godfrey has filed a supplemental brief asserting, inter alia, that Norgard has an actual conflict of interest in representing Stewart and that new substitute counsel should be appointed to represent Stewart as to the equitable tolling issues in this case.

## IV.  DISCUSSION

### A.    Conflict-Free Counsel

Pursuant to 18 U.S.C. § 3599, state prisoners seeking to vacate or set aside a death sentence have a statutory right to counsel in federal habeas proceedings brought pursuant to 28 U.S.C. § 2254.  18 U.S.C. § 3599(a)(2).  In interpreting § 3599, the Supreme Court has indicated that lower courts have the responsibility to ensure that § 2254 petitioners have conflict-free counsel.  See Martel v. Clair, 565 U.S. ___, ___, 132 S. Ct. 1276, 1284-86 (2012); see also Christeson v. Roper, 574 U.S. ___, ___, 135 S. Ct. 891, 895 (2015) (stating that "a district court would be compelled to 'appoint new counsel if the first lawyer developed a conflict'" (quoting Clair, 565 U.S. at ___, 132 S. Ct. at 1286)).  In Christeson, the Supreme Court held that the district court abused its discretion by denying the petitioner's motion for substitution of counsel, in which the petitioner argued that his attorneys had a conflict of interest in presenting an equitable tolling claim on his behalf, based on the attorneys' own failure to file a timely habeas petition.  574 U.S. at ___, 135 S. Ct. at 894-96.

The Supreme Court concluded that the district court erred in failing to acknowledge the attorneys' conflict of interest, namely, the fact that advancing a claim for equitable tolling would require the attorneys to denigrate their own performance.  Id. at ___, 135 S. Ct. at 894.  The Supreme Court explained that "a

11

'significant conflict of interest' arises when an attorney's 'interest in avoiding damage to [his] own reputation' is at odds with his client's 'strongest argument–i.e., that his attorneys had abandoned him.'" Id. (alteration in original) (quoting Maples v. Thomas, 565 U.S. ___, ___ n.8, 132 S. Ct. 912, 925 n.8 (2012)).

To show that an actual conflict hindered his lawyer's performance, the petitioner "must make a factual showing of inconsistent interests or point to specific instances in the record to suggest an actual impairment of his or her interests." Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (en banc) (internal quotation marks omitted).

**B.    Norgard's Actual Conflict of Interest**

In this case, to show that his § 2254 petition was filed within the one-year AEDPA limitations period, Stewart must demonstrate his entitlement to equitable tolling during two time periods: (1) from approximately July 15, 2005, when he signed his Fla. R. Crim. P. 3.851 motion for state post-conviction relief, until July 25, 2005, when his CCRC counsel filed the motion (the "earlier ten-day period"); and (2) then from approximately June 25, 2010, when the denial of his Rule 3.851 motion became final, until January 6, 2011, when attorney Norgard filed a § 2254 petition on his behalf (the "later six-month period").

In his supplemental brief and at oral argument, Godfrey has asserted that attorney Norgard had an actual conflict of interest because (1) he did not argue that

12

Stewart was entitled to equitable tolling during the later six-month period in 2010-2011 based on Norgard's own conduct; (2) even as to the earlier ten-day period in 2005 when CCRC represented Stewart, Norgard had a personal incentive for Stewart to not obtain equitable tolling because, if Stewart did not obtain equitable tolling for this ten-day period in 2005, the timeliness of Stewart's § 2254 petition would not hinge on Norgard's conduct during the later six-month period in 2010-2011; and (3) Norgard had a personal interest in avoiding scrutiny of his conduct during the later six-month period.[9]

Godfrey claims that attorney Norgard did not want his conduct scrutinized because, in the summertime of 2010 when Norgard should have been filing Stewart's § 2254 petition, Norgard was fully focused on another death penalty case. As a result, Godfrey alleges, Norgard delegated the task of preparing Stewart's § 2254 petition to his associate or independent contractor Margaret H. White-Small, who lacked Norgard's experience with federal habeas law and familiarity with the facts of Stewart's case. Godfrey also alleges that Norgard's office may have misled Stewart's family into believing that the § 2254 petition was filed during or before November 2010, when it was not filed until January 6, 2011.

---

[9] In Christeson, the conflict was direct: that is, to argue for equitable tolling of the AEDPA limitations period, the attorneys would have had to denigrate their own performance. 574 U.S. at ___, 135 S. Ct. at 894. This is the type of conflict in Stewart's case.

13

Further, Godfrey contends that equitable tolling based on the earlier ten-day period in 2005 was Stewart's strongest claim for equitable tolling during CCRC's representation, yet attorney Norgard initially framed the issue in such a way that the ten-day period was not at all the focus of Stewart's original claim for equitable tolling. Rather, Norgard mainly argued for equitable tolling for the entirety of CCRC's representation, based on CCRC's use of multiple teams of lawyers and its failure to have Stewart tested for brain damage.

Godfrey also emphasizes that, in the § 2254 petition, Norgard mistakenly calculated the AEDPA limitations period as expiring on April 20, 2005, as opposed to the correct date of July 19, 2005. Godfrey stresses that Norgard, using his mistaken three-month-too-late-calculation, did not allege in Stewart's § 2254 petition that CCRC engaged in misconduct by failing to file the Rule 3.851 motion between July 15, 2005, when Stewart signed it, and July 25, 2005.

Finally, Godfrey alleges that Norgard failed to obtain emails Godfrey had easily obtained from CCRC, which showed (1) that CCRC had correctly calculated the AEDPA limitations period in July 2004, approximately one year before the AEDPA limitations period expired; and (2) that in March 2005, CCRC intended to file Stewart's Rule 3.851 motion in May 2005 to "preserve some federal pleading time." Godfrey asserts that these readily discoverable emails showed that Norgard had not conducted any investigation into CCRC's reasons for not filing Stewart's

14

Rule 3.851 motion within AEDPA's limitations period, which was between July 19, 2004 and July 19, 2005.

Given the overall record, we agree that Stewart has sufficiently shown that, after Norgard did not file the § 2254 petition until January 6, 2011, Norgard at that time developed an actual conflict of interest as to the equitable tolling issues, and that a remand is necessary for the appointment of Robert Godfrey as conflict-free counsel. On remand, Stewart will have the opportunity to plead for the first time his alleged entitlement to equitable tolling during the later six-month period based on Norgard's alleged conduct, and to re-plead his equitable tolling claim as to CCRC's alleged conduct between July 15, 2005 and July 25, 2005.

After counsel Godfrey has re-pled Stewart's equitable tolling claim as to both time periods, the district court shall determine whether an evidentiary hearing is necessary.

**VACATED AND REMANDED.**[10]

---

[10] In light of the remand, Stewart's motion (filed by counsel Godfrey) to supplement the record before this Court is denied as moot. We are not making any fact findings about the supplemental documents at this juncture. We only repeat what Godfrey has alleged about the CCRC emails.