# SUPREME COURT OF THE UNITED STATES

## MARK A. CHRISTESON *v.* DON ROPER, WARDEN

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 14–6873.　Decided January 20, 2015

PER CURIAM.

Petitioner Mark Christeson's first federal habeas peti-
tion was dismissed as untimely. Because his appointed
attorneys—who had missed the filing deadline—could not
be expected to argue that Christeson was entitled to the
equitable tolling of the statute of limitations, Christeson
requested substitute counsel who would not be laboring
under a conflict of interest. The District Court denied the
motion, and the Court of Appeals for the Eighth Circuit
summarily affirmed. In so doing, these courts contra-
vened our decision in *Martel* v. *Clair*, 565 U. S. ___ (2012).
Christeson's petition for certiorari is therefore granted,
the judgment of the Eighth Circuit is reversed, and the
case is remanded for further proceedings.

I

In 1999, a jury convicted Christeson of three counts of
capital murder. It returned verdicts of death on all
three counts. The Missouri Supreme Court affirmed
Christeson's conviction and sentence in 2001, see *State* v.
*Christeson*, 50 S. W. 3d 251 (en banc), and affirmed the
denial of his postconviction motion for relief in 2004, see
*Christeson* v. *State*, 131 S. W. 3d 796 (en banc).

Under the strict 1-year statute of limitations imposed by
the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA), 28 U. S. C. §2244(d)(1), Christeson's federal
habeas petition was due on April 10, 2005. Nine months
before this critical deadline, the District Court appointed
attorneys Phil Horwitz and Eric Butts to represent

Christeson in his federal habeas proceedings. See 18 U. S. C. §3599(a)(2) (providing for appointment of counsel for state death row inmates).

Horwitz and Butts, as they have subsequently acknowledged, failed to meet with Christeson until more than six weeks *after* his petition was due. See App. to Pet. for Cert. 93a. There is no evidence that they communicated with their client at all during this time. They finally filed the petition on August 5, 2005—117 days too late. They have since claimed that their failure to meet with their client and timely file his habeas petition resulted from a simple miscalculation of the AEDPA limitations period (and in defending themselves, they may have disclosed privileged client communications). See *id.,* at 90a–92a, 135a. But a legal ethics expert, reviewing counsel's handling of Christeson's habeas petition, stated in a report submitted to the District Court: "[I]f this was not abandonment, I am not sure what would be." *Id.*, at 132a.

The District Court dismissed the petition as untimely, and the Court of Appeals denied Christeson's application for a certificate of appealability. Christeson, who appears to have severe cognitive disabilities that lead him to rely entirely on his attorneys, may not have been aware of this dismissal. See *id.*, at 229a, 231a, 237a.

Nearly seven years later, Horwitz and Butts contacted attorneys Jennifer Merrigan and Joseph Perkovich to discuss how to proceed in Christeson's case. Merrigan and Perkovich immediately noticed a glaring problem. Christeson's only hope for securing review of the merits of his habeas claims was to file a motion under Federal Rule of Civil Procedure 60(b) seeking to reopen final judgment on the ground that AEDPA's statute of limitations should have been equitably tolled. But Horwitz and Butts could not be expected to file such a motion on Christeson's behalf, as any argument for equitable tolling would be premised on their own malfeasance in failing to file timely the

habeas petition. While initially receptive to Merrigan and Perkovich's assistance, Horwitz and Butts soon refused to allow outside counsel access to their files. See App. to Pet. for Cert. 345a.

On May 23, 2014, Merrigan and Perkovich filed a motion for substitution of counsel. The District Court denied the motion, explaining only that it was "not in [Christeson's] best interest to be represented by attorneys located in New York and Pennsylvania," as Merrigan and Perkovich are. *Id.*, at 169a. The District Court did not address Merrigan and Perkovich's offer to forgo all fees and expenses associated with travel to Missouri, nor did it address the possibility of appointing other attorneys for Christeson.

Christeson appealed. The Eighth Circuit dismissed for lack of jurisdiction, apparently reasoning that Merrigan and Perkovich were not authorized to file an appeal on Christeson's behalf.[1] On September 19, 2014, while this appeal was still pending before the Eighth Circuit, the Missouri Supreme Court issued a warrant of execution setting October 29, 2014, as Christeson's execution date.

After further proceedings not relevant here, Merrigan and Perkovich again filed a motion for substitution of counsel on Christeson's behalf. The District Court again denied the motion. Explaining that substitution of "federally-appointed counsel is warranted only when it would serve the interests of justice," it offered four reasons for its decision. Order in No. 04–CV–08004 (WD Mo., Oct. 22, 2014), p. 1, App. to Pet. for Cert. 375a (quoting *Lambrix* v. *Secretary, Florida Dept. of Corrections*, 756 F. 3d 1246, 1259 (CA11 2014); internal quotation marks omitted). First, it deemed the motion to be untimely because it "was not filed until 2014, and shortly before [Christeson's]

—————

[1] Christeson has since submitted a signed retainer agreement with Merrigan and Perkovich that removes any doubt on that score.

execution date." App. to Pet. for Cert. 375a. Second, it observed that Horwitz and Butts had not "abandoned" Christeson, as they had recently appeared on his behalf in a class-action lawsuit challenging Missouri's lethal injection protocol. *Id.*, at 376a. Third, it noted that although Horwitz and Butts had represented Christeson before the Eighth Circuit, that court had not appointed substitute counsel. *Ibid.* Fourth and finally, the District Court expressed its belief that granting the motion would set "an untenable precedent" by allowing outside attorneys to seek "'abusive'" delays in capital cases. *Ibid.*

Christeson again appealed. This time, the Eighth Circuit summarily affirmed the District Court's order. We stayed Christeson's execution, see *post*, p. ___, and now reverse.

## II

Title 18 U. S. C. §3599 "entitles indigent defendants to the appointment of counsel in capital cases, including habeas corpus proceedings." *Martel* v. *Clair*, 565 U. S., at ___ (slip op., at 1). "By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty." *McFarland* v. *Scott*, 512 U. S. 849, 859 (1994). Congress has not, however, conferred capital habeas petitioners with the right to counsel of their choice. Instead, the statute leaves it to the court to select a properly qualified attorney. See §§3599(a)–(d). But the statute contemplates that a court may "replace" appointed counsel with "similarly qualified counsel . . . upon motion" of the petitioner. §3599(e).

We addressed the standard that a court should apply in considering such a motion in *Clair*. We rejected the argument that substitution of an appointed lawyer is war-

ranted in only three situations: "when the lawyer lacks the qualifications necessary for appointment . . . ; when he has a disabling conflict of interest; or when he has completely abandoned the client." 565 U. S., at ___ (slip op., at 7) (internal quotation marks omitted). Instead, we adopted a broader standard, holding that a motion for substitution should be granted when it is in the "'interests of justice.'" *Id.*, at ___ (slip op., at 13). We further explained that the factors a court of appeals should consider in determining whether a district court abused its discretion in denying such a motion "include: the timeliness of the motion; the adequacy of the district court's inquiry into the defend-ant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in com-munication between lawyer and client (and the client's responsibility, if any, for that conflict)." *Ibid.*

The District Court here properly recognized that its consideration of Christeson's motion for substitution was governed by *Clair*'s "interests of justice" standard. But its denial of his motion did not adequately account for all of the factors we set forth in *Clair*.

The court's principal error was its failure to acknowledge Horwitz and Butts' conflict of interest. Toll-ing based on counsel's failure to satisfy AEDPA's statute of limitations is available only for "serious instances of attorney misconduct." *Holland* v. *Florida*, 560 U. S. 631, 651–652 (2010). Advancing such a claim would have required Horwitz and Butts to denigrate their own per-formance. Counsel cannot reasonably be expected to make such an argument, which threatens their professional reputation and livelihood. See Restatement (Third) of Law Governing Lawyers §125 (1998). Thus, as we ob-served in a similar context in *Maples* v. *Thomas*, 565 U. S. ___, ___, n. 8 (2012) (slip op., at 17, n. 8), a "significant conflict of interest" arises when an attorney's "interest in avoiding damage to [his] own reputation" is at odds with

his client's "strongest argument—*i.e.*, that his attorneys had abandoned him."

Indeed, to their credit, Horwitz and Butts acknowledged the nature of their conflict. Shortly before the first motion for substitution was filed, they provided an update to the Missouri Supreme Court on the status of Christeson's collateral proceedings. In it, they stated:

> "Because counsel herein would be essential witnesses to factual questions indispensable to a *Holland* inquiry, there may be ethical and legal conflicts that would arise that would prohibit counsel from litigating issues that would support a *Holland* claim. Unwaivable ethical and legal conflicts prohibit undersigned counsel from litigating these issues in any way. *See Holloway* v. *Arkansas*, 435 U. S. 475, 485–486 (1978). Conflict free counsel must be appointed to present the equitable tolling question in federal district court." App. to Pet. for Cert. 48a–49a.

Yet, in their response to the District Court's order to address the substitution motion, Horwitz and Butts characterized the potential arguments in favor of equitable tolling as "ludicrous," and asserted that they had "a legal basis and rationale for the [erroneous] calculation of the filing date." *Id.,* at 86a, 90a. While not every case in which a counseled habeas petitioner has missed AEDPA's statute of limitations will necessarily involve a conflict of interest, Horwitz and Butts' contentions here were directly and concededly contrary to their client's interest, and manifestly served their own professional and reputational interests.

*Clair* makes clear that a conflict of this sort is grounds for substitution. Even the narrower standard we rejected in that case would have allowed for substitution where an attorney has a "'disabling conflict of interest.'" 565 U. S., at ___ (slip op., at 7). And that standard, we concluded,

would "gu[t]" the specific substitution-of-counsel clause contained in §3559(e), which must contemplate the granting of such motions in circumstances beyond those where a petitioner effectively "has no counsel at all"—as is the case when counsel is conflicted. *Id.*, at \_\_\_ (slip op., at 10). Indeed, we went so far as to say that given a capital defendant's "statutory right to counsel," even "in the absence" of §3599(e) a district court would be compelled "to appoint new counsel if the first lawyer developed a conflict." *Ibid.*

Given the obvious conflict of interest here, the considerations relied upon by the District Court cannot justify its decision to deny petitioner new counsel. The second and third factors noted by the District Court—that appointed counsel continued to represent Christeson in litigation challenging the means of his execution, and that the Eighth Circuit had not previously substituted counsel— are not substantial. Whether Horwitz and Butts had currently "abandoned" Christeson is beside the point: Even if they were actively representing him in some matters, their conflict prevented them from representing him in this particular matter. Likewise, it is irrelevant that the Eighth Circuit had not previously *sua sponte* directed substitution of counsel in the course of denying Christeson's request for a certificate of appealabilty and adjudicating his challenge to Missouri's execution protocol, when the conflict was not evident.

The first and fourth factors cited by the District Court— the delay in seeking substitution and the potential for abuse—might be valid considerations in many cases. See *Clair*, 565 U. S., at \_\_\_ (slip op., at 12) ("Protecting against abusive delay *is* an interest of justice"). But under the circumstances here, these factors alone cannot warrant denial of substitution. Christeson's first substitution motion, while undoubtedly delayed, was not abusive. It was filed approximately a month after outside counsel

became aware of Christeson's plight and well before the State had set an execution date, and it requested only 90 days to investigate and file a Rule 60(b) motion.

Nor is it plain that any subsequent motion that substitute counsel might file on Christeson's behalf would be futile. See *id.*, at ___ – ___ (slip op., at 15–16) (affirming denial of substitution motion as untimely where any filing made by substitute counsel would have been futile). To be sure, Christeson faces a host of procedural obstacles to having a federal court consider his habeas petition. Although Christeson might properly raise a claim for relief pursuant to Rule 60(b), see *Gonzalez* v. *Crosby*, 545 U. S. 524, 535–536 (2005), to obtain such relief he must demonstrate both the motion's timeliness and, more significant here, that " 'extraordinary circumstances' justif[y] the reopening of a final judgment." *Id.*, at 535 (quoting *Ackermann* v. *United States*, 340 U. S. 193, 199 (1950)). That, in turn, will require Christeson to show that he was entitled to the equitable tolling of AEDPA's statute of limitations. He should have that opportunity, and is entitled to the assistance of substitute counsel in doing so.

*     *     *

The petition for certiorari and the motion to proceed *in forma pauperis* are granted. The judgment of the Eighth Circuit Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

## MARK A. CHRISTESON *v.* DON ROPER, WARDEN

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 14–6873.  Decided January 20, 2015

JUSTICE ALITO, with whom JUSTICE THOMAS joins,
dissenting.

I would not reverse the decision of the Court of Appeals
in this case without briefing and argument.  As the Court
acknowledges, petitioner cannot obtain review of the
merits of his federal habeas claims without showing that
the applicable statute of limitations should have been
equitably tolled, *ante*, at 2, and the availability of equit-
able tolling in cases governed by the Antiterrorism and
Effective Death Penalty Act of 1996 (AEDPA) is a question
of great importance.

AEDPA sought to ameliorate the lengthy delay that had
often characterized federal habeas proceedings in the
past.\*  See *Woodford* v. *Garceau*, 538 U. S. 202, 206 (2003)
("Congress enacted AEDPA to reduce delays in the execu-
tion of state and federal criminal sentences, particularly in
capital cases").  AEDPA thus imposed a strict 1-year time
limit for filing a federal habeas petition.  28 U. S. C.
§2244(d).  If this 1-year period were equitably tolled
whenever a habeas petitioner's attorney missed the dead-
line and thus rendered ineffective assistance, the 1-year
period would be of little value, and the days of seemingly
interminable federal habeas review would return.  In

———————

\*Members of this Court have lamented the delay that often occurs in
capital cases.  *Johnson* v. *Bredesen*, 558 U. S. 1067, 1067–1070 (2009)
(Stevens, J., statement respecting denial of certiorari), *Elledge* v.
*Florida*, 525 U. S. 944, 944–946 (1998) (BREYER, J., dissenting from
denial of certiorari).

*Holland*, the Court held that the AEDPA statute of limitations may be equitably tolled—but only under quite extraordinary circumstances. *Holland* v. *Florida*, 560 U. S. 631, 651–652 (2010). Any expansion or further delineation of such circumstances should not be undertaken without the careful consideration that is possible only after the normal procedure of full briefing and argument.

The Court believes that briefing and argument are not necessary in this case, and my understanding of the Court's decision is that it expresses no view whatsoever on the question whether petitioner may ultimately be entitled to equitable tolling. I understand the Court to hold only that conflict-free substitute counsel should have been appointed for the purposes of investigating the facts related to the issue of equitable tolling and presenting whatever argument can be mounted in support of a request for that relief.

Based on the present record, it is not clear that this case involves anything other than an error, albeit a serious one, on the part of the attorneys who represented petitioner at the time when his federal habeas petition was due to be filed. According to those attorneys, they miscalculated the due date and as a result filed the petition after the time had run. They met with petitioner to discuss the habeas petition prior to the date on which they say they thought the petition was due but after the date on which it was actually due. These facts show nothing more than attorney error and thus fall short of establishing the kind of abandonment that is needed for equitable tolling under our precedent. See *id*., at 651–652. I do not understand the Court's opinion to hold otherwise.

Because of the close relationship between the question that the Court decides (the propriety of the District Court's refusal to appoint substitute counsel) and the question of petitioner's entitlement to equitable tolling, I think that plenary review would have been more appro-

ALITO, J., dissenting

priate in this case.  I write separately to emphasize that the Court's summary disposition does not address that issue.