# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1171

_____

United States of America

*Plaintiff - Appellee*

v.

Jamie D. Jones

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: December 12, 2014
Filed: July 29, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Jamie Duwayne Jones on two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appeals, claiming the magistrate judge[1] did not adequately inquire into his pre-trial

_____

[1]The Honorable Robert E. Larsen, United States Magistrate Judge for the Western District of Missouri.

pro se motion to substitute counsel, his rights under the Speedy Trial Act were violated, and the government engaged in prosecutorial misconduct by introducing a prejudicial video (which the district court[2] played during deliberations). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Jones was arraigned on October 23, 2012. The magistrate judge appointed counsel and set a November 26 trial date. His attorney sought five continuances. The first request asked for time to negotiate a plea agreement. The next two, for time to provide substantial assistance before entering a plea agreement. The last two, for time to respond to an additional charge in a superseding indictment. Each stated that Jones wanted to assist the government and agreed that it was "in his best interests to waive his rights to a speedy trial." The district court granted each continuance "in the interest of justice."

Jones filed a pro se motion for ineffective assistance of counsel on July 15, 2013—about five weeks before trial. Jones listed his reasons for new counsel in these words:

> (1) Dose not take my Phone calls no more.
> (2) She tells me she is coming to see me so we can get ready for trial. (never dose)
> (3) I've been to Pre-trial twice now. Both times I never went to trial. She Contenue each time. I've wrote her and made it Court record that I want to go too trial. no Contenue's.
> (4) Each time I don't go to trial I call my attorney with no answer. Then I have to write to the clerk find out my next Trial date.

---

[2]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

(5) In a criminal case, A attorney files motion to Dismiss for Lack of Evidence and file with the Court to Surrpress the Evidance, This maybe Lazyness or that the attorney Has no interest in my case. no Disposition were tooken in my case.

(6) My case in not a complex case. I've been in Jail for 9 months now. More then enough time to Perpair for trial.

(7) If this isn't enough evidence to Prove Ineffective Assistance of Counsel. I don't know what it is. I've wrote Letters to the Court about, my attroney getting Contenue's to make some kind of record to Prove my greivance to this Court. All these things about in (5) was told to me was going to be filed and Disposition were to be tooken. But none of these were done. and Didn't Keep my trial within the fast and speedy trial clause. Thank you for your time in this matter. I'm Just asking for a fair Trial.

Respectfully submitted This day July 11, 2013

I want a different attorney.

/s/ Jamie Jones

Without holding a hearing, the magistrate judge denied the motion, and ordered Jones's counsel to meet with him, inform the court if she found that a "substantial complaint exists," and if so, request a hearing date. Neither Jones nor his attorney said anything more about the substitution motion—either by written correspondence or at the pre-trial hearing 14 days later. About a month after filing his pro se motion, Jones proceeded to trial with the same counsel.

The government presented evidence that a confidential informant and undercover agent went to Jones's house to buy a handgun from Jones. (Count One) The agent noticed the gun's grip was wrapped in black tape. Over a year later, police searched a different house looking for drugs. Jones was in bed with a woman in the southeast bedroom. In that bedroom, police found mail addressed to Jones and a gun hidden in the vent. (Count Two) The gun's grip was wrapped in black tape. A DNA criminalist testified that some of Jones's DNA markers were on this gun. Jones did not live in the house.

The government introduced a video of the search, but showed the jury only still photographs. Jones did not object to the video. During deliberations the jury requested to see the video. The court asked the government if anything on the video differed from the still photographs shown at trial. The government responded, "It's a fluid video, but—" and the court ordered it played. In the first 11 minutes, the video shows three individuals sitting handcuffed outside, multiple cars, and four people (including Jones) inside. The house is untidy. The people inside, including Jones, appear dazed or tired. The southeast bedroom is disorganized. The video shows the vent where the gun was found, along with the gun and a bag of bullets wrapped in electrical tape. Inside the vent, underneath the gun, is a stack of papers with a letterhead from a bankruptcy firm. The stack of papers is addressed, not to Jones, but to another person. The video continues with police finding a briefcase in the southeast bedroom with multiple papers and credit cards. An envelope addressed to Jones is in a drawer in the bedroom. The same drawer has a black bag with an email receipt for Xanax and other items. The receipt is attached to a copy of a credit card with the same name as the papers located in the vent. A box containing a green leafy substance, scales, baggies, multiple pills, possible methamphetamine, and a W-2 belonging to yet another person is shown under the bed in a different bedroom.

The court stopped the video after about 11 minutes, asked counsel why the whole video was agreed to "because there's more stuff on there than needed to be covered." The court then instructed the jury, "I think you've seen enough that was relevant to the case presented and maybe some that was not pertinent to the evidence in the case, and I'm sure you will be able to separate that out as you reflect upon the testimony and the elements for each offense in this case."

The jury convicted Jones on both counts.

II.

Jones argues that the magistrate judge violated his Sixth Amendment right to counsel by failing to hold an adequate inquiry into his substitution motion.

A.

Jones moved to substitute counsel on July 15. The magistrate judge denied the motion on July 17. Jones did not mention the motion when appearing before the magistrate judge 14 days later for his pre-trial conference. He did not file an objection to the district court. Because Jones "did not contest the magistrate judge's ruling by filing an objection in the district court, . . . he is precluded from assigning error to this ruling now on appeal." *United States v. Kelley*, 774 F.3d 434, 438 (8th Cir. 2014), *citing* **Fed. R. Crim. P. 59(a)** (Nondispositive Matters) ("Failure to object in accordance with this rule waives a party's right to review."). Rule 59(a) "'is intended to establish the requirements for objecting in a district court in order to preserve appellate review of magistrate judges' decisions.'" *Id.*, *quoting* **Fed. R. Crim. P. 59(a)** advisory committee's note. By failing to raise his objection to the magistrate judge's ruling on this nondispositive motion, Jones may have waived his right to appeal the issue.

However, the government did not argue that Jones waived review. Because Rule 59(a) is a "nonjurisdictional waiver provision," *see Kelley*, 774 F.3d at 439 (internal quotation marks omitted), the government's failure to raise this issue cautions against holding Jones's procedural default against him. At any rate, this court "'may excuse the default in the interests of justice.'" *See id.*, *quoting* **Thomas v. Arn**, 474 U.S. 140, 155 (1985).

B.

This court reviews a trial court's denial of a substitution motion for abuse of discretion. ***Martel v. Clair***, 132 S. Ct. 1276, 1287 (2012) ("Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion."). Even if a trial court abuses its discretion in denying a substitution motion without inquiry, the Sixth Amendment does not require an automatic reversal of the conviction. *See **id.*** at 1289 n. 4 ("We note as well that the Court of Appeals ordered the wrong remedy even assuming the District Court had abused its discretion in denying Clair's substitution motion without inquiry. The way to cure that error would have been to remand to the District Court to decide whether substitution was appropriate at the time of Clair's letter."). *See also **Mickens v. Taylor***, 535 U.S. 162, 179 (2002) (Kennedy, J., concurring) ("The constitutional question must turn on whether trial counsel had a conflict of interest that hampered the representation, not on whether the trial judge should have been more assiduous in taking prophylactic measures."); ***Ausler v. United States***, 545 F.3d 1101, 1104 (8th Cir. 2008) (noting automatic reversal rule in *Holloway v. Arkansas*, 435 U.S. 475, 488-89 (1978), only applies when defense counsel is forced to represent codefendants over objection, unless trial court determines no conflict exists).

The magistrate judge analyzed Jones's motion under this circuit's "justifiable dissatisfaction" standard.[3] Under this standard, a criminal defendant who is

---

[3]In *Clair*, the Supreme Court held that in federal habeas cases, district courts should use the "interests of justice" standard from 18 U.S.C. § 3006A(c) to evaluate substitution motions. Even though habeas petitioners do not have a Sixth Amendment right to counsel, the Court held that "[s]ection 3006A applies the 'interests of justice' standard to substitution motions even when the Sixth Amendment does not require representation." *Clair*, 132 S. Ct. at 1286. The "interests of justice" factors are derived from the considerations courts of appeals use

dissatisfied with appointed counsel must show "justifiable dissatisfaction" to warrant substitution of counsel, such as "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *United States v. Exson*, 328 F.3d 456, 460 (8th Cir. 2003). "When faced with a motion to appoint substitute counsel, the district court must balance several factors, including the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." *Kelley*, 774 F.3d at 438. (internal quotation marks omitted). *See also United States v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992) ("The defendant's right to counsel, however, 'does not involve the right to a "meaningful relationship" between an accused and his counsel.'" (quoting *United States v. Machor*, 879 F.2d 945, 952 (1st Cir. 1989))). A trial court has an obligation to inquire thoroughly into situations where a defendant makes a "seemingly substantial complaint about counsel." *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991). "[I]n some instances, the court [has] the relevant facts without engaging in an intensive inquiry." *United States v. Rodriguez*, 612 F.3d 1049, 1054 (8th Cir. 2010). *See also United States v. Jones*, 662 F.3d 1018, 1026 (8th Cir. 2011) ("[A] thorough inquiry may not necessitate a separate hearing on the matter."); *United States v. Blum*, 65 F.3d 1436 (8th Cir. 1995) ("The inquiry, *if any*, must be on the record" (emphasis added)).

An on-the-record inquiry into Jones's substitution motion would have aided this court's review. *See Clair*, 132 S. Ct. at 1287 ("[A]n on-the-record inquiry into the defendant's allegations 'permits meaningful appellate review' of a trial court's exercise of discretion." (quoting *United States v. Taylor*, 487 U.S. 326, 336-37

---

in reviewing substitution motions. *Id.* at 1287. In federal habeas cases, where the Sixth Amendment does not apply, trial courts *must* use the "interests of justice" standard outlined in *Clair*. *See Christeson v. Roper*, 135 S. Ct. 891, 894 (2015). This is not a federal habeas case.

(1988))). Nonetheless, the magistrate judge did not abuse his discretion in denying Jones's substitution motion without inquiry. Jones's motion thoroughly explained his reasons for requesting a new lawyer, and the district court had all the information necessary to make a ruling. *See*, *e.g.*, *Atley v. Ault*, 191 F.3d 865, 872 (8th Cir. 1999) ("[I]n some cases, no inquiry may be required because all of the relevant facts have been disclosed to the court."); *United States v. Velazquez*, 772 F.3d 788, 798 (7th Cir. 2014) ("'Unless the complaint underlying a request for substitution of counsel is *sufficiently detailed*, the court may not rule on the motion without conducting a proper hearing . . . .'" (quoting *United States v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992)) (emphasis added)); *United States v. Fields*, 483 F.3d 313, 353 (5th Cir. 2007) ("The duty to inquire is not so formalistic as to require affirmative questioning when such is rendered unnecessary because the parties have volunteered all the relevant information for a court to determine that no substantial conflict exists."); *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981) (finding harmless the district court's failure to inquire after defendant already explained his reasons for requesting new counsel and made no new arguments on appeal). *Cf.* *Clair*, 132 S. Ct. at 1288 ("As all Circuits agree, courts cannot properly resolve substitution motions without probing why a defendant wants a new lawyer.").

First, Jones said that his attorney had not met with him to prepare for trial and was no longer taking his phone calls. He claimed not to know the reason for his attorney's silence and inaction, but surmised it was either due to laziness or disinterest in his case. Although Jones complains of a lack of communication with his attorney, nowhere does he allege a "complete" breakdown in communication. *See Kelley*, 774 F.3d at 439 (finding no justifiable dissatisfaction where a defendant "requested substitute counsel because of . . . a purported lack of communication" and "wished his attorney had been more open and spent more time with him"). Jones also said that his was "not a complex case" and his counsel had been given more than enough time to prepare for trial. Since the trial was more than five weeks away, and since Jones did not complain that he and his attorney were *unable* to communicate,

-8-

a stern command to defense counsel to meet with Jones sufficiently addressed Jones's communication frustrations. *See **United States v. Morrissey***, 461 F.2d 666, 670 (2d Cir. 1972) (although defendant complained, among other things, that counsel did not meet with him in five months preceding trial, district court's failure to inquire into complaint was harmless where facts indicated case was uncomplicated and counsel had ample time to prepare).

Second, Jones expressed frustration that his attorney did not file motions to suppress and dismiss for lack of evidence. His "frustration with appointed counsel's performance or disagreement with counsel's tactical decisions is not justifiable dissatisfaction." ***United States v. Taylor***, 652 F.3d 905, 908 (8th Cir. 2011).

Finally, Jones asserts that he presented a conflict of interest because he did not agree to continuances and did not want to give up his speedy trial rights (his attorney's continuance requests claimed he waived them). However, the Supreme Court has held, "a defendant may not prospectively waive the application of the [Speedy Trial] Act." ***Zedner v. United States***, 547 U.S. 489, 500 (2006). The record indicates that the district court gave many reasons, other than the defendant's consent, in finding the "ends of justice" were served by each continuance, and a defendant's consent to a continuance is not required for a court to make such a finding. ***United States v. Herbst***, 666 F.3d 504, 510 (8th Cir. 2012) ("[T]he plain language of section 3161(h)(7)(A) does not require a defendant's consent to the continuance if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." (internal quotation marks omitted)).[4] Jones's claim that he wrote the court to make a record of his opposition to the continuances requested by his attorney is not supported by the record. The only other letter from Jones in the record is one

---

[4]Counsel's conflict of interest, of course, may entitle a client to new counsel. *See **Christeson***, 135 S. Ct. at 894.

where he expressed a desire to "help himself" by making a deal with the government. For this very reason his attorney made three continuance requests. *See Clair*, 132 S. Ct. at 1288 (excusing district court's failure to inquire into substitution motion, in part, because court had "reason to think" defendant's charges "lacked merit"). The magistrate judge did not abuse its discretion in denying Jones's detailed motion for new counsel without inquiry.

III.

Jones claims his Speedy Trial Act rights were violated because the grounds in his counsel's continuance requests did not support the "ends of justice" finding required by 18 U.S.C. § 3161(h)(7)(A). The Speedy Trial Act requires a defendant be brought to trial within 70 days after his indictment or first appearance in court where the charge is pending—whichever is later. *See id.* **§ 3161(c)(1)**. "Any period of delay resulting from a continuance granted by any judge . . . at the request of the defendant or his counsel . . . if the judge granted such continuance on the basis of his findings that the ends of justice served . . . outweigh the best interest of the public and the defendant in a speedy trial." *Id.* **§ 3161(h)(7)(A)**. "When a defendant fails to assert his right to a speedy trial by moving for a dismissal before trial, the right is waived." *United States v. Williams*, 605 F.3d 556, 572-73 (8th Cir. 2010).

By failing to assert his Speedy Trial Act rights before trial, Jones waived any arguments against the district court's grants of the continuance requests. Jones argues that his July 15 motion should be construed as a dismissal request under the Speedy Trial Act because it suggests that he did not want his case continued and that his attorney did not "keep my trial within the fast and speedy trial clause." However, the court did not interpret Jones's motion as a dismissal request under the Speedy Trial Act—a fair interpretation since Jones ends his motion with, "I'm Just asking for a fair Trial" and "I want a different attorney." *See id.* at 573 (finding defendant waived

-10-

right to assert Speedy Trial Act violation even though defendant had attempted to file pro se motion to dismiss, which district court refused to accept into record).

IV.

Jones asserts prosecutorial misconduct for introduction of the video of the search. He claims the video was "clearly inadmissible" because "the depiction of the small amount of drugs, coupled with individuals sitting handcuffed outside the house, individuals laying around the house who appeared dazed and likely on drugs and the general disarray of the house had nothing to do with whether he possessed the gun." He also argues that "the most prejudicial evidence was the four credit cards in three different names found in a briefcase with other papers belonging to [Jones] in the same Southeast bedroom where the gun and [Jones] were found."

"The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Wilkens*, 742 F.3d 354, 361 (8th Cir. 2014). Since Jones's counsel did not object to the video, his claim of prosecutorial misconduct is reviewed for plain error. *See United States v. Darden*, 688 F.3d 382, 388 (8th Cir. 2012). Under plain-error review, this court will reverse only if there is error that is plain and affects Jones's substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). A reviewing court should not correct a forfeited error "unless the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (brackets omitted), *quoting United States v. Young*, 470 U.S. 1, 15 (1985).

At trial, Jones's counsel mentioned that police searched the house for drugs and drug paraphernalia because an undercover detective had made a drug purchase there. The government also presented evidence that police searched the house because

-11-

someone other than Jones had sold drugs there. The government linked Jones to the second gun because he was in the southeast bedroom when they arrived, they found the gun in the bedroom vent, the gun had black tape wrapped around the grip (like the tape on the gun Jones sold in count one), police found an envelope addressed to Jones in a drawer in the bedroom, and a DNA analyst found some of Jones's DNA markers on the gun. The government presented no evidence connecting Jones to the black bag, the briefcase, or the box located in the second bedroom. Jones argued that he did not live in the house, multiple people had occupied the southeast bedroom, and the gun could have belonged to anyone.

The video contains relevant evidence. "In felon-in-possession cases, we have permitted the introduction of evidence that provides the context in which the crime occurred, including events immediately preceding the defendant's arrest and the circumstances of the arrest itself." *United States v. Byers*, 603 F.3d 503, 506 (8th Cir. 2010). *See also* *United States v. Williams*, 95 F.3d 723, 731 (8th Cir. 1996) ("Rule 404(b) only forbids introduction of extrinsic bad acts whose only relevance is to prove character, not bad acts that form the factual setting of the crime in issue."). Likewise, the ownership of items in the southeast bedroom was relevant to show who had occupied the room. The video is even arguably *beneficial* to Jones because it shows two separate documents belonging to an individual other than Jones in the same room as the gun. *See United States v. Conrad*, 320 F.3d 851, 858 (8th Cir. 2003) (finding no abuse of discretion in admitting evidence of drug paraphernalia in a gun possession case to prove possession and control of apartment).

Although other parts of the video *are* irrelevant, Jones cannot demonstrate that it prejudicially affected his substantial rights, depriving him of a fair trial. The box containing suspected marijuana, meth, scales, and baggies was found in the other bedroom, and the jury had already been informed by both defense counsel and the government that illegal drug activity had occurred at the house. The government

presented no evidence at trial connecting Jones to the briefcase filled with credit cards and financial papers. Although this information probably should have been excluded, the evidence linking Jones to the gun was strong. The gun's grip was wrapped in black tape similar to the gun Jones sold in count one, and some of his DNA markers were found on the gun. Further, the district court told the jury that the video contained non-pertinent information and instructed them to "separate that out." *See* ***Yannacopoulos v. Gen. Dynamics Corp.***, 75 F.3d 1298, 1305 (8th Cir. 1996) ("It is certainly reasonable to believe, absent evidence to the contrary, that the jury adhered to the judge's instructions.").

\* \* \* \* \* \* \*

The judgment is affirmed.

_____