15-481-pr
*Davis v. Lempke*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of March, two thousand sixteen.

PRESENT:   JOSÉ A. CABRANES,
           BARRINGTON D. PARKER,
           DEBRA ANN LIVINGSTON,
                    *Circuit Judges.*

_____

WARREN DAVIS,

        *Petitioner-Appellant,*                                      15-481-pr

        v.

JOHN LEMPKE,

        *Respondent-Appellee.*

_____

**FOR PETITIONER-APPELLANT:**     JOSEPH M. LATINO, Law Office of Anthony J. Maiocchi, Hawthorne, NY.

**FOR RESPONDENT-APPELLEE:**     LISA M. DENIG (Steven A. Bender, William C. Milaccio, *on the brief*), *for* Janet DiFiore, District Attorney of Westchester County, White Plains, NY.

Appeal from an order of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the District Court be and hereby is **VACATED and REMANDED**.

Petitioner-appellant Warren Davis ("Davis") appeals from an order of February 5, 2015, granting a motion to dismiss as untimely Davis's petition for a writ of habeas corpus. Although Davis concedes that the instant petition was not timely filed, he argues that he is entitled to equitable tolling because his attorney—Joseph M. Latino ("Latino"), who continues to represent Davis on this appeal—miscalculated the filing date. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

To qualify for equitable tolling, Davis must show, *inter alia*, "that some extraordinary circumstance stood in his way and prevented timely filing." *Rivas v. Fischer*, 687 F.3d 514, 538 (2d Cir. 2012) (internal quotation marks omitted). In general, an attorney's miscalculation of a filing date "is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007). An attorney's error may rise to the level of an "extraordinary circumstance," however, if it is "so egregious as to amount to an effective abandonment of the attorney-client relationship." *Rivas*, 687 F.3d at 538.

In light of these principles, Latino's continued involvement in this case has ensured "a significant conflict of interest" between his "interest in avoiding damage to his own reputation" and "his client's strongest argument"—namely, "that [Latino] abandoned him. *See Christeson v. Roper*, 135 S. Ct. 891, 894 (2015) (internal quotation marks and alteration omitted). Although Davis has no right to counsel in this collateral proceeding, this Court has "an independent interest" in ensuring compliance with professional ethical standards and the appearance of fairness. *See Wheat v. United States*, 486 U.S. 153, 160 (1988); *see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) ("The authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." (internal quotation marks omitted)). Accordingly, before addressing the merits of Davis's equitable-tolling argument, we assess whether, under the specific facts of this case, Latino's representation might pose a problem to the integrity of these proceedings.

We conclude that Latino's presentation of Davis's equitable-tolling argument has "created a substantial danger that the proceedings . . . would not appear fair to all who observe them." *See United States v. Oberoi*, 331 F.3d 44, 52 (2d Cir. 2003) (internal quotation marks omitted). To be clear, nothing about Latino's performance suggests that his advocacy before us has been anything but zealous, and Latino insists that he can provide competent and diligent representation to Davis. But "[a] lawyer's good faith" in his ability to represent a client is "an inadequate safeguard when standing alone." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 571 (2d Cir. 1973). For Davis to prevail, Latino must convince us that his own incompetence was "extraordinary." As the Supreme Court recently

2

observed, that is an argument that "[c]ounsel cannot reasonably be expected to make," *Christeson*, 135 S. Ct. at 894—nor can observers, given the specific facts here, reasonably be expected to believe that counsel would make such an argument zealously.[1] Under the circumstances of this case, then, we believe that Latino's conflict of interest merits his disqualification, and thus we exercise our discretion to so order.

Latino's representation of Davis also raises a question about the proceedings below. When preparing Davis's petition for habeas corpus, Latino acknowledged his conflict of interest, *see* J.A. 555, 558,[2] and he arranged for another attorney, Anthony J. Maiocchi ("Maiocchi"), to present the equitable-tolling argument before the District Court, *see* J.A. 618 n.1. Although the District Court accepted that solution, *see* J.A. 578 n.1, subsequent developments have cast doubt on its adequacy. When Davis filed his petition on May 22, 2014, Latino and Maiocchi appeared to have separate law practices; for instance, they worked at different addresses. But at some point after Davis filed his petition, Latino became "of counsel" to Maiocchi's firm. From that point, there arose at least the possibility that Latino's conflict became imputed to Maiocchi. *See Hempstead Video*, 409 F.3d at 133 (noting that an attorney's conflicts are ordinary imputed to his firm).

We emphasize that the District Court had no particular reason to consider the association between Latino and Maiocchi, which arose after Davis's petition was filed.[3] Moreover, the conflicts of an "of counsel" attorney need not always be imputed to his firm. *See id.* at 136; *cf. Murray v. Metropolitan Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009) (limiting the scope of imputed conflicts

---

[1] Although Latino argues that Davis has waived any conflict, courts and state ethics committees have suggested that conflicts like Latino's are unwaivable. *See, e.g.*, N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 973 (2013); N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 533 (1981); *see also United States v. Fulton*, 5 F.3d 605, 613 (2d Cir. 1993) (suggesting that an attorney's desire to avoid reputational damage may create an unwaivable conflict in some circumstances); *cf. Hempstead Video*, 409 F.3d at 132 (noting that state ethics rules inform, but do not control, our decisions regarding disqualification). We need not decide whether an attorney's argument for equitable tolling based on his own error always creates an unwaivable conflict of interest. We conclude only that Latino's involvement necessarily calls into question the integrity of these proceedings.

[2] "J.A." refers to the Joint Appendix.

[3] On November 5, 2014, Latino filed a change-of-address form with the District Court that listed his "New Firm" as "Offices of Anthony J. Maiocchi." District Ct. Docket No. 22. Latino and Maiocchi seem to have been working together at least since August 20, 2014, when Maiocchi used letterhead indicating that Latino was "of counsel" at his firm. *See* J.A. 574. Aside from these incidental and clerical notifications, however, neither party suggested to the District Court that the association between Maiocchi and Latino might present any problem. (Both parties argue on appeal that Latino's conflict should not be imputed to Maiocchi. *See* Pet'r Supplemental Br. 8; Resp't Supplemental Br. 8.)

3

under the witness-advocate rule). Nonetheless, the record is insufficiently developed to allow us to assure ourselves that Maiocchi's representation of Davis was proper. Accordingly, we remand this case so that the District Court may conduct a hearing to ensure that Maiocchi's presentation of Davis's equitable-tolling argument did not suffer from any conflict of interest that might cast doubt on the integrity of the District Court's proceedings.

## CONCLUSION

For the foregoing reasons, we **VACATE** the order of the District Court and **REMAND** with instructions to conduct a hearing on whether a conflict of interest may have tainted the habeas corpus proceedings below.

To be clear, we do not suggest that the District Court acted inappropriately in allowing Maiocchi to present Davis's equitable-tolling argument. We remand only so that the District Court may be informed as to the nature of any conflict that might exist, so as to be in a position to assess the effect of the conflict, if any, on these proceedings.

After an amended order is entered by the District Court, either party may restore jurisdiction to this Court by notifying the Clerk of this Court by letter, and the returned appeal will be assigned to this panel. An additional notice of appeal will not be needed. Latino is disqualified from representing Davis on the returned appeal. Maiocchi may represent Davis on the returned appeal only if the District Court determines that the professional association between him and Latino is "too attenuated" to require imputation of any conflict of interest. *Cf. Hempstead Video*, 409 F.3d at 136.[4] If Maiocchi is unwilling or unable to represent Davis on the returned appeal, and if Davis is unable to afford other representation, we will direct the appointment of counsel.

> FOR THE COURT:
> Catherine O'Hagan Wolfe, Clerk

---

[4] The District Court denied Davis *in forma pauperis* status because "any appeal from [the District Court's] Order would not be taken in good faith." J.A. 582. It is unclear whether Davis would otherwise qualify to proceed *in forma pauperis*. If the District Court determines on remand that *in forma pauperis* status is appropriate, counsel will be appointed from the Criminal Justice Act panel pursuant to 28 U.S.C. § 2254(h) and 18 U.S.C. § 3006A.