POSNER, Circuit Judge,
dissenting.
Lombardo was convicted in federal district court of several gang-related activities, including a murder, and was sentenced to life in prison. After unsuccessfully appealing, he moved the sentencing court, pursuant to 28 U.S.C. § 2255(a), to set aside his sentence on the ground that he’d been denied effective assistance of counsel at his trial, in violation of his Sixth Amendment right “in all criminal prosecutions ... to have the Assistance of Counsel for his de-fence”; if there was such a denial, he is entitled to a new trial.
Because his conviction became final on March 25, 2013, the one-year statutory deadline for fifing such a motion (see 28 U.S.C. § 2255(f)) was the same day the following year—and he missed that deadline. It was the fault of his lawyer (a different lawyer from the one who had defended him at trial), who, not knowing when the deadline for fifing the motion was, failed to consult a knowledgeable lawyer, instead relying entirely on the unsound advice of a paralegal (referred to by the lawyer as a “trusted paralegal,” though actually untrustworthy) who informed him that the deadline was not March 25, 2014 (the true deadline), but June 3, 2014. As the lawyer explained to the court, “Counsel’s [i.e., his own] miscalculation was based on misinformation provided by a trusted paralegal that his client’s one year time limit to file a 2255 motion began on June 3, 2013 (the day the petitioner’s motion for rehearing on his writ of certiorari was denied). As it turns out, counsel was mistaken in his belief that his client’s one-year time limit began when the motion for rehearing was denied. Based upon this mistake, a mistake made by counsel, the government is asking this honorable court to issue an order dismissing the petitioner’s 2255 motion as untimely.... Counsel’s miscalculation was, and very simply should be, attributed to human error.”
The lawyer’s misconduct not only precluded a timely fifing of the motion to set aside the sentence but also may well have been part of a pattern of incompetence because the lawyer was later reprimanded by the Florida Supreme Court for failing to supervise a paralegal in another case.
The government (as noted by the lawyer in his mea culpa) had asked the district judge to dismiss Lombardo’s motion as untimely, and the judge complied—possibly because Lombardo’s lawyer offered no reason for of the judge to deny the government’s request and didn’t even cite the applicable legal standard for forgiveness of a lawyer’s error. Instead he cited Pioneer' s “excusable neglect” standard for forgiving a missed procedural deadline— the reference is to Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)—rather than the “extraordinary circumstances” standard of Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), for equitable tolling of a statute of limitations.
Notice too the hint in the lawyer’s explanation that he may have engaged in egre *562 gious professional misconduct by outsourcing a critical issue to a paralegal. The judge should have realized that this lawyer was not to be trusted; had he realized this the judge would not have accepted, without close questioning, the lawyer’s feeble excuse of having made a “simple miscalculation.” The simplicity of the miscalculation was not exculpatory, but condemnatory, of the lawyer’s conduct. The judge should have investigated further before denying equitable tolling. Instead he remarked that “missing a deadline because that deadline has been miscalculated is not excusable neglect”—holding the paralegal’s miscalculation against Lombardo, even though Lombardo had hired the lawyer, not the paralegal, to calculate the deadline and, sitting in prison, had no idea the lawyer would improperly hand his ease over to the paralegal. It’s true that in Holland v. Florida, supra, 560 U.S. at 651-52, 130 S.Ct. 2549, the Supreme Court said “We have previously held that ‘a garden variety claim of excusable neglect’ ... does not warrant equitable tolling”— but the question is whether Lombardo’s claim is “garden variety.”
The judge added that Lombardo should have “count[ed] to the tolling date himself along with his hired counsel.” That was another unrealistic remark by the judge; it would never have occurred to Lombardo to “count to the tolling date himself’—he’s doubtless never heard the term “tolling date.” He trusted his lawyer to handle the case.
The judge refused to issue a certificate of appealability, without which Lombardo could not appeal from the denial of his section 2255 motion to set aside his sentence. A judge of this court, however, granted the certificate, bringing Lombar-do’s appeal from the denial of his motion before this court. We recruited new counsel to represent Lombardo in his appeal.
I am surprised and disappointed at the decision of the other two judges on this panel to affirm the district court’s determination that Lombardo is not entitled to equitable tolling of the deadline. The government, echoing the district judge, argues that a defendant may not avail himself of equitable tolling of a statutory deadline unless some “extraordinary circumstance” stands in his way, and a “simple miscalculation that causes his attorney” to miss the deadline “is not extraordinary.” That is misleading. It was an inexcusable miscalculation either by Lombardo’s lawyer or by the lawyer’s “trusted” paralegal—a miscalculation that Lombardo would not have noticed or been able to correct. There is no suggestion that anyone told him “you’d better count the days yourself because your lawyer may screw up,” or that without such a warning Lombardo could be expected to know or guess that he should do that. And while not every mistake by a lawyer is “extraordinary,” this one was, if consequences are relevant, as they should be.
The government was relying, mistakenly in my view, on Holland v. Florida, supra, 560 U.S. at 651, 130 S.Ct. 2549, where the Supreme Court had distinguished between “a simple ‘miscalculation’ that leads a lawyer to miss a filing deadline,” which would not warrant equitable tolling (even if the defendant was challenging a death sentence on the ground that his trial counsel was ineffective, as in Lawrence v. Florida, 549 U.S. 327, 336-37, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007)), and “more serious instances of attorney misconduct.” The Court said in Holland that it had “previously made clear that a ‘petitioner’ is ‘entitled to equitable tolling’ only if he shows ‘(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ and prevented timely filing.” 560 *563 U.S. at 649, 130 S.Ct. 2549. Noting that as in this case “the ‘extraordinary circumstances’ at issue involve[d] an attorney’s failure to satisfy professional standards of care,” id., the Court rejected an approach that denies equitable tolling unless an attorney has engaged in specified types of misconduct, saying “the [Eleventh Circuit] held that, where that is so, even attorney conduct that is ‘grossly negligent’ can never warrant tolling absent ‘bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer’s part.’ But in our view, [that] standard is too rigid.... [A]t least sometimes, professional misconduct that fails to meet the Eleventh Circuit’s standard could nonetheless amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling.... We have previously held that ‘a garden variety claim of excusable neglect,’ such as a simple ‘miscalculation’ that leads a lawyer to miss a filing deadline ... does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a ‘garden variety claim’ of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct.” 560 U.S. at 649-52, 130 S.Ct. 2549. The district judge should have suspected that Lombardo’s counsel had engaged in professional misconduct and should have noticed a significant conflict between counsel’s continued representation of Lombardo and his interest in protecting his own reputation—and law license. Cf. Christeson v. Roper, — U.S. -, 135 S.Ct. 891, 894, 190 L.Ed.2d 763 (2015). He did not realize that this could have been one of the “more serious instances of attorney misconduct,” which, as Holland teaches, may amount to an extraordinary circumstance.
There has been as yet no determination of whether the sentence imposed on Lom-bardo at the conclusion of the trial was unconstitutional or otherwise subject to collateral attack. Only if it was does 28 U.S.C. § 2255(a) entitle him to a new trial. But rather than affirming, in effect, the sentence on the basis of his lawyer’s incompetence, we should remand the case to the district court with instructions to conduct an evidentiary hearing to evaluate his performance. For this is a close case, since we are told in Holland v. Florida, supra, 560 U.S. at 649-51, 130 S.Ct. 2549, that “a ‘petitioner’ is ‘entitled to equitable tolling’ only if he shows ‘(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ and prevented timely filing.... But we have ... made clear that often the ‘exercise of a court’s equity powers ... must be made on a case-by-case basis.’ In emphasizing the need for ‘flexibility,’ for avoiding ‘mechanical rules,’ we have followed a tradition in which courts of equity have sought to ‘relieve hardships which, from time to time, arise from a hard and fast adherence’ to more absolute legal rules, which, if strictly applied, threaten the ‘evils of archaic rigidity.’ The ‘flexibility’ inherent in ‘equitable procedure’ enables courts ‘to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices.’ Taken together, these cases recognize that courts of equity can and do draw upon decisions made in other, similar cases for guidance. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.”
I am aware that in the context of procedural default the Supreme Court has stated without qualification that a petitioner must “bear the risk of attorney error.” Coleman v. Thompson, 501 U.S. 722, 752-53, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *564 But as explained in Holland, supra, 560 U.S. at 650, 130 S.Ct. 2549, quoting 501 U.S. at 726, 111 S.Ct. 2546, “Coleman was ‘a ease about federalism,’ asking whether federal courts may excuse a petitioner’s failure to comply with a state court’s procedural rules, notwithstanding the state court’s determination that its own rules had been violated. Equitable tolling, by contrast, asks whether federal courts may excuse a petitioner’s failure to comply with federal timing rules, an inquiry that does not implicate a state court’s interpretation of state law. Holland does not argue that his attorney’s misconduct provides a substantive ground for relief.... This case asks how equity should be applied once the statute is recognized. And given equity’s resistance to rigid rules, we cannot read Coleman as requiring a per se approach in this context” (emphasis in original).
So we have in the present case unprofessional attorney conduct that may well rise to the level of the “egregious” and the “extraordinary”; but to know whether it does we need more facts—specifically we need to know why Lombardo’s lawyer relied on a non-lawyer’s calculation of the filing deadline. I suspect that his conduct was both “egregious” and “extraordinary,” as it represented a complete abdication of his responsibility to represent Lombardo. I can’t recall a case in my 35 years as a judge in which a lawyer made such an error—and with such adverse consequences for his client if we affirm. But we should let the district judge try to untangle the mess in the first instance.